UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| FRANCIS GARRIGUES, § § § Plaintiff, § § vs. § GREG ABBOTT, Governor of Texas, and § WARREN KENNETH "KEN" PAXTON, JR. § Attorney General of the State of Texas, § § Defendants, § § and § § STEVEN GOMEZ, § § Interested Party. § | Civil Action No.: 2:15-364 |

## PLAINTIFF'S ORIGINAL COMPLAINT

### I. NATURE OF THE CASE

1. Plaintiff is the owner of a single-family home and is a beneficiary of restrictive covenants related to real property adjacent to his home which allows the adjacent property to be used only as a country club and golf course. Under the restrictive covenants, in effect, it would take 100% of the beneficiary properties to agree to change the deed restrictions, thereby creating certainty for the beneficiary properties. The golf course closed in 2010. In 2014, a North Texas developer, Blackard Global, Inc. and its CEO, Jeff Blackard, began a public campaign to effectively terminate the restrictive covenants for 40 of 126 acres of the golf course to build a high density, multi-story development. Plaintiff's property abuts the 40 acres targeted by Blackard. Plaintiff publicly opposed Blackard's efforts to change the deed restrictions. Blackard's campaign included the circulation of a petition under Tex. Prop. Code Ch. 201 which was drafted by

Blackard's attorney. Under the petition, the restrictive covenants on the remaining 86 acres of the property would not change. Blackard included a list of permitted uses for the subject property as part of the petition. Blackard's petition failed. Thereafter, in 2015, Blackard went to his friend, Tan Parker, who serves in the Texas Legislature, to create a statutory scheme to change the deed restrictions. The result of Blackard's lobbying efforts is Tex. Prop. Code Ch. 213, which was signed into law by Governor Greg Abbott on June 19, 2015. It allows the deed restrictions to be changed by a 75% vote, which violates the restrictive covenants originally entered into by Plaintiff when he purchased his property. Tex. Prop. Code Ch. 213 substantially impairs Plaintiff's deed restrictions as it withdraws his guaranteed veto of any use of the restricted property other than as a golf course, it gives condominium units and apartments a far greater weighted vote than single family homes, and it allows property owners to change the deed restrictions to affect other homes, without changing the deed restrictions to affect their own. Steven Gomez has published statements of intent to conduct a vote under Tex. Prop. Code Ch. 213 to change the deed restrictions on the property at issue starting on or about September 3, 2015. Plaintiff simply wants to preserve the contractual rights that he secured when he purchased his home.

2. This is a civil action wherein Plaintiff prays for a declaratory judgment that Tex. Prop. Code Ch. 213 is unconstitutional as well as a permanent injunction, to restrain Defendants Greg Abbott, Governor of Texas, and Kenneth "Ken" Paxton, Jr., Attorney General of the State of Texas, from acting under color of state law to deprive Plaintiff of rights and privileges secured to him by the Texas Constitution and 42 U.S.C. §1983 and the United States Constitution, as more fully set out below in Counts I-IX.

## II. JURISDICTION

3. Plaintiff brings this action to redress deprivations by Defendants, Governor Abbott and

Attorney General Paxton, acting under color of state law, of certain rights secured to Plaintiff as alleged herein under the United States Constitution and the Texas Constitution.

4. Jurisdiction is therefore conferred upon this Court pursuant to Title 28 U.S.C. §1331; Title 28 U.S.C. § 1343(a)(3) and (4); and Title 42 U.S.C. § 1983.

### III. VENUE

5. Venue properly lies with this Court pursuant to Title 28 U.S.C. § 1391(b) since the events giving rise to this claim occurred in the Southern District of Texas, Corpus Christi Division.

### IV. DECLARATORY RELIEF

6. Authority for declaratory relief sought herein by Plaintiff is conferred upon this Court by 28 U.S.C. § 1331, 28 U.S.C. §2201 and Rule 57 of the Federal Rules of Civil Procedure.

7. Plaintiff is entitled to recovery of attorney's fees and costs in this matter pursuant to 42 U.S.C. § 1988.

### V. PARTIES

8. Plaintiff, Francis Garrigues, is an individual who owns real property subject to Tex. Prop. Code Ch. 213 located at 7034 Hathor, Corpus Christi, Nueces County, Texas, and he is a beneficiary of deed restrictions applicable to the property at issue.

9. Defendant Greg Abbott is the Governor of the State of Texas and signed SB1168 into law. He has an interest in this proceeding and any issues herein. Defendant is named in his official capacity only. He may be served with process at: Office of the Governor Greg Abbott, 1100 San Jacinto Blvd., Rm. 2.119, Austin, Texas 78701.

10. Defendant Warren Kenneth "Ken" Paxton, Jr. is the Attorney General of Texas and is charged by law with the enforcement and administration of Texas statutes and has an interest in this proceeding and the issues herein. Defendant is named in his official capacity only. He may be

served with process at: Office of the Attorney General, 300 W. 15th Street, Austin, TX 78701.[1]

11. Interested Party, Steven Gomez, is an individual who has published statements of intent to circulate a petition under Tex. Prop. Code Ch. 213 relevant to the property at issue. Mr. Gomez is a single-family homeowner who is a beneficiary of the deed restrictions. Mr. Gomez may be served with citation at 6630 Clarion, Corpus Christi, Texas 78412.

## VI. FACTUAL ALLEGATIONS

### Restrictive Covenants Related to Plaintiff's Property

12. Plaintiff owns property adjacent to the former Pharaoh Valley Golf Course located in Corpus Christi, Nueces County, Texas, and he is a beneficiary of restrictive covenants related to this property. Plaintiff purchased his property on or about May 2, 2006.

13. The restrictive covenants at issue were executed September 15, 1971, by Frank Peerman, President of Peerman Development Company, as general partner for Pharaoh Enterprises, Ltd., filed and recorded on September 27, 1971, as Clerk's File No. 859478, Volume 1410, Page 726, Deed Records, Nueces County, Texas, Lot 3, Pharaoh Valley Northeast, and Tracts 1 and 2. The Pharaohs Country Club, as more particularly described in the Restrictive Covenants Instrument, such land collectively called the "Restricted Land," was conveyed to The Pharaohs, Inc. The restrictive covenants instrument reads:

> This conveyance is made subject to restrictions . . . which are applicable to the [Restricted Land] . . .
>
> There is hereby impressed upon [the Restricted Land] the following restrictions:

---

[1] Attorney General Paxton and Jeff Blackard are acquainted. Mr. Blackard has contributed to Paxton's campaigns for public office. Also, in 2007 Blackard and Paxton were in negotiations for Paxton's State Representative office to be located at Adriatica in McKinney, Texas. Adriatica is a development similar to the proposed high density; multi-story development made the basis of this lawsuit. Blackard was the original developer of Adriatica located in McKinney, Texas.

      1. No use shall be permitted upon said property other than a Country Club and any improvements which might be used in connection therewith, such as storage barns, club house, golf course, swimming pool, tennis courts, or improvements consistent with such use.

      2. The construction or erection of fencing of any type (other than existing boundary markers or fence) within one hundred feet (100') along any of the perimeter boundaries of said property except where the same are adjacent to Ennis Joslin Road, McArdle Road, Ni1e Drive or Pharaoh Drive.

      3. These restrictions and covenants are hereby declared to be covenants running with the land and shall be fully binding upon Grantee herein by the acceptance of title hereunder, upon which Grantee covenants and agrees to abide by the same . . .

      If any Person or corporation shall violate or attempt to violate any of the restrictions or covenants herein, it shall be lawful for any person or persons owning any real property adjacent to the above described property, or the Grantor herein, to prosecute proceedings at law or in equity against the person or corporation violating or attempting to violate any such restriction and covenant. Invalidation of anyone or any part of these restrictions by judgment or by Court order shall in no wise affect any of the other provisions or parts of provisions which shall remain in full force and effect.

14. The general rules of contract construction apply to restrictive covenants. *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex.1998).

15. Under the law in effect at the time of the creation of the restrictive covenants, in effect, it would take 100% of the beneficiary properties to agree to change the deed restrictions. In the absence of an amendment process in a restrictive covenant, all owners must join in terminating a covenant. *See Amason v. Woodman*, 498 S.W.2d 142, 143 (Tex. 1973).

16. The beneficiaries of the deed restrictions are those owning real property adjacent to the restricted property at issue. These properties are made up of 103 single family homes; three condominium regimes: Carriage Park, Rock Creek and Seaside Villas; and one apartment complex: The Shores Apartments. Exhibit 1 - Map. Each condominium regime is comprised of units or apartments which are individually owned and other elements which are commonly owned.

The condominium property which is adjacent to the property at issue is owned by each condominium regime in common as an undivided interest, but it is not owned by any individual.

### Blackard finds a gold mine on the Pharaoh deed restricted property.

17. The Pharaoh Valley Golf Course closed in 2010. The property is currently in a natural state, which does not violate the deed restrictions. As the property is deed-restricted, it is valued lower than market value. However, if the deed restrictions can be lifted, a developer will have a gold mine. Blackard found his gold mine with the closed Pharaoh Valley Golf Course, and in 2014 he began a public campaign to effectively terminate the restrictive covenants for 40 acres of the property fronting Ennis Joslin Road in order to build a high density, multi-story development. Plaintiff's property abuts this 40 acres. Exhibit 1 - Map. The total golf course acreage is approximately 126 acres. The specific area that Blackard has targeted for development is a flood zone and wetlands which directly connects to Oso Bay.

18. In 2014, Blackard's campaign included the circulation of a petition under Tex. Prop. Code Ch. 201 that was drafted by his attorney, John Bell.[2] Under the 2014 petition, the restrictive covenants on the approximately remaining 86 acres of property would not change. The developer included a list of 143 separately permitted uses for the 40 acres. These permitted uses included amphitheater, dormitories, dance hall, cell towers, theater - with up to 4 screens, utilities, furniture store, package shop, together with just about any conceivable commercial use. Exhibit 2 - Permitted Uses.

19. Despite Plaintiff, and others, speaking out that they did not want the deed restrictions

---

[2] Blackard did not publicly release the results of the petition vote by each voting property.

changed and that they did not support the Blackard project,[3] Blackard went to the City of Corpus Christi and applied to have the zoning changed for 57.75 acres of the property. City of Corpus Christi, Ordinance 14-00802. The City approved the zoning. City of Corpus Christi, Ordinance 14-00802.[4]

## History of Tex. Prop. Code Ch. 213

20. Blackard did not have the support to change the deed restrictions. Thus, in 2015, he went to his friend, Tan Parker, a member of the Texas House of Representatives and Chairman of the House Republican Caucus,[5] to create a way to change the deed restrictions.[6]

21. Tex. Prop. Code Ch. 201 has a means to extend, renew, create, and modify deed restrictions, and it includes a 75% threshold and strict voting and notice procedures, including an opt-out provision and recourse to a court of law. However, instead of asking the Legislature to amend Tex. Prop. Code Ch. 201 to apply to the present situation, Blackard sought entirely new legislation specifically crafted to the deed restrictions at issue in this lawsuit and, based upon the

---

[3] Some examples of the speech in opposition to the project, included, statements made directly to Blackard; statements made in public meetings; statements as part of zoning and City Council meetings and other public forums. This speech included, but is not limited to: the fact that the proposed development violates the restrictive covenants; the proposed development is a nuisance; the proposed development is high density and multi-story and does not fit in the environment for which it is proposed; the proposed development allows for any number of possibilities being built which creates uncertainty and many of these uses are unwelcome; the proposed development will increase activity including crime; the development is planned right on top of a flood zone and most likely will cause an increase in flood risk for properties bordering the development area - some of these properties are already in this flood zone; the proposed development will increase traffic and disturb the peaceful environment guaranteed by the restrictive covenants.

[4] The effective date of Blackard's zoning ordinance, August 12, 2014, was after the petition vote which started in May 2014.

[5] Representative Parker is from Flower Mound, Texas - about 35 miles from Blackard's headquarters in McKinney, Texas.

[6] At least as early as July 17, 2014, Blackard anticipated going to the legislature as a way of defeating the deed restrictions as he placed this as an action item on a project time line with the City of Corpus Christi: "State Legislative Action for CCRs"(covenants, conditions and restrictions).

voting results that only Blackard possessed, which gave him a distinct advantage seeking to defeat the deed restrictions.

22. The bill drafted to meet Blackard's goals was HB 2594. Exhibit 3 - HB 2594. As originally authored by Representative Parker, HB 2594 had components specifically targeted to defeat the deed restrictions: a very low voting threshold of 66% (especially as compared to Tex. Prop. Code Ch. 201 requiring 75%) and lax notice and voting procedures with no opt-out provision; allowing one property owner to cast a vote for a property owned by spouses; allowing a majority vote for multi-owner properties; and no provision for recourse to a court (again, unlike Tex. Prop. Code Ch. 201 ).

23. The Texas House of Representatives' Business & Commerce Committee held a hearing on HB 2594 on April 14, 2015. Representative Parker opened the testimony. As Representative Parker closed, he stated that the petition vote on the property at issue in this case was 74% [including each individual condominium unit voting]. The record supports that HB 2594 was a developer-driven bill aimed at providing Blackard a key to a specific gold mine - the former Pharaoh Valley Golf Course.[7]

24. Also, toward the conclusion of the April 14, 2015 hearing, committee member

---

[7] After Representative Parker opened, Mr. Blackard offered testimony. In addition to Mr. Blackard, Mr. Beaty also offered testimony.  Mr. Blackard and Mr. Beaty's business partner, Maurice E. "Pete" Moore III, registered as "for" the bill at the hearing. Blackard, Beaty and Moore formed "JMP Corpus, LLC" for the purposes of conducting business relevant to the proposed development in Corpus Christi. Hugo Berlanga, who was hired by JMP, LLC, as a lobbyist, was also in attendance at the hearing and registered as "for".  Marilyn Jordan, also identified as an employee of Blackard Global, Inc., and who is a real estate agent working in Corpus Christi for Blackard, was present and identified as "for" the bill.  Finally, Steven Gomez, on behalf of the Pharaoh Valley Neighborhood Association, testified for the bill. Those attending and testifying as opposed were: Claude Gilson; Gay Gilson, Todd Muenster, each Pharaoh Valley residents, and John Greytok representing the Concerned Pharaoh Valley Homeowners. Although not present to testify regarding HB2594, after learning of the bill and hearing the testimony, Lewis Smith registered and testified against HB2594, "If something like this passed, developers would see these failing golf courses as gold mines" and "there would be a gold rush and the person who would take it in the shorts, unknowingly, as it always is, is the homeowner..."

Representative Nicole Collier stated:

> The developer. I didn't realize this was a particular. He had a piece of property that he was going after in this area and this bill is particularly for this developer to do this property. I didn't realize that when you started this thing.

25. HB 2594 left the House Business & Industry Committee with a significant change – the voting requirements were raised from 66% to 75% to match the requirements of Tex. Prop. Code Ch. 201. However, the voting procedures were not changed to conform to Chapter 201, and there was no opt-out provision; it allowed one property owner to cast a vote for a property owned by spouses; it allowed a majority vote for multi-owner properties; and it provided no recourse to a court of law as in Chapter 201. HB 2594 was further particularized to specifically target the Pharaoh Valley Golf Course property by adding language that the legislation would apply only if,

> for a continuous period of at least 36 months, the amenity property has not been in operation, has not been maintained, or has been operated or maintained in a dilapidated or substandard condition; and if zoning regulations apply to the amenity property, the owner of the amenity property has received all required zoning approvals for any proposed redevelopment of the amenity property.

As Blackard applied for and received zoning for the property at issue, and the property has not been in operation as a golf course for a period of at least 36 months, this property is most likely the only one in Texas that fits this specific definition.[8]

26. HB 2594 did not get off of the House floor before midnight on May 14, 2015, which resulted in HB 2594 dying. However, HB 2594 was resurrected by adding it, substantially in its prior form, as Amendment 4 to SB 1168. Exhibit 4 - Amendment 4 to SB 1168. SB 1168 added a sunset clause in the statute: "This chapter expires September 1, 2021." This provides a specific

---

[8] Representative Parker testified, as an example purportedly supporting his bill, that the McKinney Greens Golf Course in Collin County has been unused for years. This is not correct. McKinney Greens is open and operating. In or about July 2015, Blackard announced that he placed McKinney Greens under contract for development. McKinney Greens is not subject to Chapter 213.

9

window for Blackard to act under special authority afforded to him by this legislation.

27. SB 1168 passed both legislative houses[9] and, on June 19, 2015, Governor Greg Abbott signed the bill, which is codified as Tex. Prop. Code Ch. 213.

28. Steven Gomez, an owner of a single family home adjacent to the golf course, has published statements of intent to conduct a vote under Tex. Prop. Code Ch. 213 to change the deed restrictions on the property at issue starting on or about September 3, 2015. Exhibit 1 - Map.

## Tex. Prop. Code Ch. 213

29. Chapter 213 of the Property Code ("Chapter 213") provides a mechanism for modifying or terminating restrictive covenants applicable to an "amenity property" within a development. An amenity property is "real property the use of which is restricted by a dedicatory instrument to use as a golf course or country club." Tex. Prop. Code § 213.001(1). A "development" is "amenity property . . . and all real property designated as beneficiary property in the dedicatory instrument." *Id*., § 213.001(4)(A-B). The property at issue, and the adjacent property, come within these definitions. Plaintiff owns a single-family home adjacent to the amenity property; therefore, he is a beneficiary of the deed restrictions at issue and has standing to bring this lawsuit.

30. Under Chapter 213, restrictions on the use of an amenity property may be modified or terminated by petition in accordance with the statute. *Id*., § 213.003. A petition may be circulated if, "for a continuous period of at least 36 months, the amenity property has not been in operation; and . . . if zoning regulations apply to the amenity property, the owner of the amenity property has

---

[9] Blackard and his lobbyist were smart in that they attached the amendment to a highly popular Senate bill that had been in the works for a couple of legislative session, thereby assuring that the legislation targeting the Pharaoh Valley Golf Course property would pass and would be signed into law.

received all required zoning approvals for any proposed redevelopment of the amenity property." *Id*., § 213.004. A copy of the petition must be delivered to all owners of each lot or parcel of real property in the development and to all owners of each unit or apartment of each condominium, if any, in the development. *Id*., § 213.007(a)(1). Once the petition is circulated, the modification or termination of a restriction is adopted if the owners of at least 75 percent of the total number of the lots or parcels of land and the units or apartments of condominiums in the development, including the owner of the amenity property, vote in favor of the modification or termination of the restriction. *Id*., § 213.008(a). The present facts meet all requirements to come within Chapter 213 and for Steven Gomez, or other similarly situated owners, to proceed with a petition under Chapter 213.

## CAUSES OF ACTION

## 42 U.S.C. §1983

31. Section 1983 of the Civil Rights of 1871, 42 U.S.C. § 1983, prohibits any person acting under color of state law from depriving any citizen or person of the rights, privileges and immunities secured by the Constitution

32. Defendants, Governor Abbott and Attorney General Paxton's actions made the basis of this lawsuit are functions of a governmental unit. Therefore, their actions are "under color of State law" for purposes of 42 U.S.C. §1983.

33. Governor Abbott and Attorney General Paxton are "persons" for purposes of liability under 42 U.S.C. § 1983.

34. Plaintiff alleges that Governor Abbott and Attorney General Paxton, acting under color of state law, have violated Plaintiff's federal constitutional rights as set out below.

# UNITED STATES CONSTITUTION

## Count I: Violation of U.S. Const. Art. I, § 10

35. U.S. Const. art. I, § 10 states:

No State shall enter into any Treaty, Alliance, or Confederation; grant Letters of Marque and Reprisal; coin Money; emit Bills of Credit; make any Thing but gold and silver Coin a Tender in Payment of Debts; pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility.

36. Chapter 213 violates U.S. Const. art. I, § 10 by substantially impairing the obligations of contracts, in this case, Plaintiff's rights under the deed restrictions at issue, without significant and legitimate public purpose behind the legislation, without being based upon reasonable conditions, and without being of a character appropriate to the public purpose justifying the legislation's adoption. *See Energy Reserves Group v. Kansas P. & L. Co.*, 459 U.S. 400 (1983). Chapter 213 substantially impairs Plaintiff's deed restrictions as it withdraws his guaranteed veto of any use of the restricted property other than as a golf course, it gives condominium units and apartments a far greater weighted vote than single-family homes, and it allows property owners to change the deed restrictions to affect other homes, without changing the deed restrictions to affect their homes.

## Count II: Violation of Procedural Due Process Clause under the Fourteenth Amendment

37. U.S. Const. amend. XIV, § 1 states:

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

38. Governor Abbott and Attorney General Paxton, acting under color of state law, have

deprived Plaintiff of his property interest in his property and in the amenity property (the golf course), as defined by state law, without satisfactory process. *See PFZ Properties, Inc. v. Rodriguez*, 928 F.2d 28, 30 (1st Cir. 1991).

39. Chapter 213 violates the Due Process Clause of the Fourteenth Amendment by taking Plaintiff's vested property rights contained in the deed restrictions without proper procedural safeguards: there is no "due notice" or service prior to the taking of the property; the petition voting process is not sufficient to meet due process requirements; there is no opportunity to be "heard"; and there is no recourse to a court.

**Count III: Violation of the Equal Protection Clause of the Fourteenth Amendment**

40. U.S. Const. amend. XIV, § 1 states:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

41. Governor Abbott and Attorney General Paxton, acting under color of state law, have deprived Plaintiff of equal protection under the Fourteenth Amendment regarding his property interest in the amenity property.

42. Chapter 213 violates the Fourteenth Amendment, as applied, by denying equal protection by allowing owners to gerrymander a vote on deed restrictions to affect some, but not all, properties. In effect, the statute allows discrimination by allowing some properties to be burdened with deed restriction modifications or terminations while other properties remain unburdened. The statute is arbitrary, capricious and not rationally related to legitimate objectives.

43. Further, Chapter 213 violates the Fourteenth Amendment by denying equal protection

13

by allowing condominium and apartment owners to be given each a single vote even though their beneficiary property at issue is owned in common as a single undivided interest compared to single family homes wherein each property, rather than owner, is given one vote; thus, the statute is arbitrary, capricious and not rationally related to legitimate objectives.

### Count IV: Violation of Substantive Due Process under the Fourteenth Amendment

44. U.S. Const. Amendment XIV, Section 1 states:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

45. Chapter 213 violates the Fourteenth Amendment, as applied, by denying substantive due process by allowing owners to gerrymander a vote on deed restrictions to affect some, but not all, properties. In effect, the statute allows discrimination by allowing some properties to be burdened with deed restriction modifications or terminations while other properties remain unburdened. The statute is arbitrary, capricious and not rationally related to legitimate objectives.

46. Further, Chapter 213 violates the Fourteenth Amendment by denying substantive due process by allowing condominium and apartment owners to be given each a single vote even though their beneficiary property at issue is owned in common as an undivided interest compared to single family homes wherein each property, rather than owner, is given one vote; thus, the statute is arbitrary, capricious and not rationally related to legitimate objectives.

## TEXAS CONSTITUTION

### Count V: Violation of the Texas Constitution
### Article I, §§ 16 & 29 - Impairment of Contracts

47. Texas Const. art. I, § 16 states:

14

BILLS OF ATTAINDER; EX POST FACTO OR RETROACTIVE LAWS; IMPAIRING OBLIGATION OF CONTRACTS. No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made.

48. Texas Const. art. I, § 29 states:

PROVISIONS OF BILL OF RIGHTS EXCEPTED FROM POWERS OF GOVERNMENT; TO FOREVER REMAIN INVIOLATE. To guard against transgressions of the high powers herein delegated, we declare that everything in this "Bill of Rights" is excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto, or to the following provisions, shall be void.

49. Any statute that releases a part of the obligation to perform the contractual obligation, or that to any extent amounts to a material change, or modifies it, unconstitutionally impairs the contract under art. I, § 16. The "obligation of a contract," for purposes of the constitutional prohibition of impairment of contractual obligations, is defined as the law which binds the parties to perform their agreement.

50. Chapter 213 violates Texas Const. art. I, §§ 16 & 29 in that it impairs the obligations of contracts – the restrictive covenants and deed restrictions are contracts. Under the deed restrictions at issue, 100% of the beneficiaries of the deed restrictions must agree to any modifications of the restrictions. This creates certainty related to the purchase of beneficiary property such as Plaintiff's, and these are vested property rights. Chapter 213 impairs these clear and strong contractual property rights. Therefore, it is contrary to art. I, § 16, and it is void under art. I, § 29.

**Count VI: Violation of the Texas Constitution Article I, §§ 16 & 29 - Retroactive Law**

51. Chapter 213 violates art. I, §§ 16 & 29 in that it is a retroactive law which impairs Plaintiff's vested property rights which are the subject of the restrictive covenants, and there is no compelling public interest to overcome the heavy presumption against retroactive laws.

**Court VII: Violation of the Texas Constitution Article I, § 19 - Due Course of Law**

52. Texas Const. art. I, § 19 states:

DEPRIVATION OF LIFE, LIBERTY, ETC.; DUE COURSE OF LAW. No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land.

53. Chapter 213 violates art. I, § 19 as it deprives Plaintiff and other homeowners of property without due course of law: there is no "due notice" or service prior to the taking of the property; the petition voting process is not sufficient to meet due process requirements; and there is no recourse to a court.

**Court VIII: Violation of the Texas Constitution Article I, § 19 - Due Process - Property**

54. Chapter 213 violates art. I, § 19, as applied, by denying substantive due process by allowing owners to gerrymander a vote on deed restrictions to affect some, but not all, properties. The statute, in effect, allows discrimination by burdening some properties with deed restriction modifications or terminations while other properties remain unburdened. The statute is arbitrary, capricious and not rationally related to legitimate objectives.

**Count IX: Violation of the Texas Constitution Article I, § 19 - Due Process - Property**

55. Chapter 213 violates art. I, § 19, as applied, by denying substantive due process by allowing condominium and apartment owners to be given each a single vote even though their beneficiary property at issue is owned in common as an undivided interest compared to single family homes wherein each property, rather than owner, is given one vote. The statute is arbitrary, capricious and not rationally related to legitimate objectives.

**Count X: Violation of the Texas Constitution Article I, § 3 -
Equal Protection- Gerrymandering**

56. Texas Constitution art. I, § 3 states:

16

EQUAL RIGHTS.  All free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services.

57. Chapter 213 violates art. I, § 3, as applied, by denying equal protection by allowing owners to gerrymander a vote on deed restrictions to affect some, but not all, properties. The statute, in effect, allows discrimination by burdening some properties with deed restriction modifications or terminations while other properties remain unburdened. The statute is arbitrary, capricious and not rationally related to legitimate objectives.

### Count XI: Violation of the Texas Constitution Article I, § 3 - Equal Protection -Condominiums are Given Preferential Treatment

58. Chapter 213 violates art. I, § 3, as applied, by giving preferential treatment to condominium and apartment owners by giving each a single vote even though their beneficiary property at issue is owned in common as an undivided interest compared to single family homes wherein each property, rather than owner, is given one vote; there is no rational basis for this preferential treatment.

### Count XII: Violation of the Texas Constitution Article III, § 56(b) - Special Law

59. Texas Const. art. III, § 56(b) states:

(b) In addition to those laws described by Subsection (a) of this section in all other cases where a general law can be made applicable, no local or special law shall be enacted; provided, that nothing herein contained shall be construed to prohibit the Legislature from passing:
    (1) special laws for the preservation of the game and fish of this
    State in certain localities; and
    (2) fence laws applicable to any subdivision of this State or counties
    as may be needed to meet the wants of the people.

60. Chapter 213 violates art. III, § 56(b) as it is a special law passed as relief at the request of and for the benefit of Blackard to defeat the restrictive covenants at issue so that he may develop the property for his own financial gain.

**Count XIII: Violation of the Texas Constitution Article II, §1 and Article III §1 - Allowing Property Owners to Implement Police Power**

61. Texas Const. art. II, § 1 states:

DIVISION OF POWERS; THREE SEPARATE DEPARTMENTS; EXERCISE OF POWER PROPERLY ATTACHED TO OTHER DEPARTMENTS.  The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit:  Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

62. Texas Constitution art. III, § 1 states:

SENATE AND HOUSE OF REPRESENTATIVES.  The Legislative power of this State shall be vested in a Senate and House of Representatives, which together shall be styled "The Legislature of the State of Texas."

63. Chapter 213 unconstitutionally delegates legislative power to private landowners in violation of art. II, § 1 and art. III, § 1 by allowing landowners to implement the police power of the state.

**PRAYER**

64. WHEREFORE, Plaintiff prays the Court, under one or all of the aforementioned counts, issues the following:

a. A permanent injunction enjoining the enforcement of Chapter 213 by Defendants, their agents and employees, and Steven Gomez and others similarly situated against Mr. Garrigues, and others similarly situated;

b. A declaration that Mr. Garrigues is a beneficiary of the restrictive covenants and has a right to enforce them.

c. A declaration that the challenged legislation on its face violates U.S. Const. art. I, § 10 and the Fourteenth Amendment of the United States Constitution;

  d. A declaration that the legislation, as applied, violates U.S. Const. art. I, § 10 and the Fourteenth Amendment of the United States Constitution;

  e. A declaration that the challenged legislation on its face violates art. I, §§ 3, 16, 19 & 26; art. II, § 1, art. III, § 1 and art. III, § 56(b) of the Texas Constitution.

  f. A declaration that the challenged legislation, as applied, violates art. I, §§ 3, 16, 19 & 26; art. II, § 1, art. III, § 1 and art. III, § 56(b) of the Texas Constitution.

  g. A declaration that the Defendants have violated Mr. Garrigues' constitutional rights and, as a result, that Mr. Garrigues has been damaged;

  h. An order requiring that the Defendants pay all costs, interest and attorney's fees as may be incurred with this civil action pursuant to 42 U.S.C. § 1988 and any other applicable law or rights; and

  i. An order providing such other and further relief, at law or equity, as the Court deems just and proper and for the purpose of redressing Mr. Garrigues' grievances.

Respectfully Submitted,

 /s/ Gay E. Gilson
_____

| | |
|---|---|
| Gay E. Gilson | David R. Weiner |
| Law Office of Gay E. Gilson | State Bar No. 21087500 |
| SBN 00784131/Fed.I.D. 16385 | Rosenthal Weiner LLP |
| 5525 S. Staples, Suite B3 | 12221 Merit Dr., Suite 1640 |
| Corpus Christi, Texas 78411 | Dallas, Texas 75251 |
| Tel: (361) 887-0552/Fax: (361) 887-0554 | Tel: (214) 871-6600/Fax: (214) 871-6640 |
| Email: gegilson@gilsonlaw.com | Email: david@rosenthalweiner.com |
| Attorney in Charge for Plaintiff | Co-counsel for Plaintiff |
| | (Motion for admission *pro hac vice* pending) |