IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| FRANCIS GARRIGUES, § | | |
| Plaintiff, § | | |
| § | | |
| VS. § | | |
| § | | |
| JOHN HARDIE, § | | |
| Defendant, § | CIVIL NO. 2:15-CV-364 | |
| and § | | |
| § | | |
| STEVEN GOMEZ, APEX GOLF § | | |
| PROPERTIES CORPORATION, and § | | |
| ERIC PERKINS § | | |
| Interested Parties. § | | |

# ORDER

BE IT REMEMBERED that on February 9, 2017, the Court **DISMISSED** the above-captioned case for lack of subject matter jurisdiction.

## I. Factual History[1]

The basic contours of the conflict from which this litigation arises are not in dispute. At issue is the proposed redevelopment of the former Pharaoh Valley Golf Course in Corpus Christi, Texas, which closed in 2010, and the subsequent enactment of Chapter 213 of the Texas Property Code ("Ch. 213"), which allows for the modification or termination of restrictive covenants that encumber this site. The Pharaoh Valley Golf Course closed in 2010. Since its closure, the approximately 126-acre property the former course occupies, which is owned by interested party Apex Golf Properties, Corp. ("Apex Golf"), has reverted to a natural state. Plaintiff Francis Garrigues ("Garrigues") and Defendant John Hardie ("Hardie") both own residential property abutting this site. Both are beneficiaries of the restrictive

---

[1] Unless otherwise noted, all facts in this section are undisputed and are drawn from Plaintiff's Third Amended Original Complaint, Dkt. No. 24, and Defendant's First Amended Answer to Plaintiff's Third Amended Complaint, Dkt. No. 31.

covenants that govern how the development of this site may proceed. These restrictive covenants, or deed restrictions, were executed in 1971 by Pharaoh Enterprises, Ltd., and are recorded at Volume 1410, Page 726, Deed Records of Nueces County, Texas (the "Restrictions"). They apply to the owners of various properties adjacent to the former Pharoah Valley Golf Course. In all, the owners of 103 single-family homes, three condominium regimes, and apartments located on two separate lots are beneficiaries of these Restrictions. In pertinent part, the Restrictions state:

> No use shall be permitted upon [the restricted] property other than a Country Club and any improvements which might be used in connection therewith, such as storage barns, club house, golf course, swimming pool, tennis courts, or improvements consistent with such use.
>
> …
>
> If any person or corporation shall violate or attempt to violate any of the restrictions or covenants herein, it shall be lawful for any person or persons owning any real property adjacent to the above described property, or the Grantor herein, to prosecute proceedings at law or in equity against the person or corporation violating or attempting to violate any such restriction and covenant.

Both Garrigues and Hardie agree that, at the time these Restrictions were created, Texas law required the unanimous consent of all beneficiaries before their terms could be altered.

In 2014, a North Texas development corporation, Blackard Global, Inc. ("Blackard Global") applied for an amendment to the City of Corpus Christi's Unified Development Code ("UDC") on behalf of Apex Golf. *See* Dkt. No. 46-4 at 1. This application sought to change the zoning codes for 57.75 acres of the former Pharoah Valley Golf Course to accommodate "a mixed-use pedestrian- and community-oriented development." *Id.* Following multiple public hearings, including in front of the City Planning Commission and City Council, the City Council of Corpus Christi granted Blackard Global's application, and enacted related amendments to the UDC. *Id.* These amendments included the addition of an "overlay" to the UDC to accommodate a master development plan centered around "development concepts" such as "[a] European village with buildings placed near the

street right-of-way and mixed-use buildings resulting in a pedestrian-oriented development," a "central lake in the 'village core,'" a "principal plaza," and "public gathering spaces," all to be located on the rezoned 57.75 acres of the former Pharoah Valley Golf Course. *Id.* at 2.

One year later, on June 19, 2015, Texas Governor Greg Abbott ("Abbott") signed into law Ch. 213, entitled "Modification or Termination of Restrictions in Certain Real Estate Developments by Property Owners' Association or Property Owner Petition." Tex. Prop. Code § 213. This amendment to the Texas Property Code provides "a procedural option to allow for the modification or termination of a restriction on the use of an amenity property." § 213.002(b). It defines "amenity property" as "real property the use of which is restricted by a dedicatory instrument to use as a golf course or country club." § 213.001(1). It authorizes the modification or termination of deed restrictions encumbering any such amenity property by petition, where at least 75% of the owners of all real property benefitting from such restrictions and the owner of the amenity property itself approve the petition. §§ 213.008(a), 213.001(4).

Specifically, Ch. 213 empowers a "petition circulator" to propose a modification or termination in accordance with certain procedural prerequisites. For instance, a petition cannot be circulated under the law unless an amenity property has not been in operation for at least 36 continuous months, and the owner of the amenity property "has received all required zoning approvals for any proposed redevelopment of the amenity property." § 213.004. If these threshold requirements are met, a petition circulator must still comply with various notice requirements, and must certify the results of a petition vote by filing an affidavit with the county clerk in the county where the restriction at issue is recorded. § 213.010. If no effective date is included in the petition itself, then the modification or termination voted on becomes effective as of the date a petition circulator's affidavit is filed. § 213.012.

From September 3, 2015 to November 3, 2015, Hardie circulated a petition under Ch. 213 seeking to modify the Restrictions on "not more than 42" of the 126

acres constituting the former Pharoah Valley Golf Course. The petition sought to modify the Restrictions' definition of allowable "improvements" to the property to include "a mixed-use development" for the "not more than 42 acres" the petition targeted. Dkt. No. 24, Ex. 5. It specified that such a "mixed-use development" could "only" include "residential office, retail and commercial uses including townhomes, condominiums, apartments, office space, restaurants, hospitality accommodations and banquet space, and retail space[.]" *Id.* It further detailed an expansive list of the "authorized uses" to which retail space in the "mixed-use development" could be put.[2] *Id.* The petition did not seek to modify the Restrictions as applied to the "remaining 69 acres of the property" the former Pharoah Valley Golf Course occupies. *Id.* Instead, the petition noted that these 69 acres would "remain under the original deed restriction and be used solely as a golf course, club house, tennis courts, swimming pool and accessory buildings related to such uses." *Id.* Hardie filed an affidavit purporting to make this modification effective on November 9, 2015. This affidavit represents that 296 owners of 356 total lots, or 83% of participating owners, voted for Hardie's petition. Garrigues and Hardie agree that the petition Hardie circulated is governed by Ch. 213. Yet Garrigues challenges this petition and Hardie's affidavit as improper, and also claims that Ch. 213 itself violates a number of federal and state constitutional provisions.

**II. Procedural History**

On August 27, 2015, Garrigues filed an initial complaint against Defendants Abbott and Attorney General of Texas Warren Kenneth Paxton, Jr. ("Paxton"),

---

[2] This list included, among other proposed "authorized uses," the following terms: "Amphitheater, Public or Private," "Antenna and Support Structure (Commercial or Non-Commercial)," "Apartments (up to 1,200 units)," "Assisted Care or Living Facility," "Auto Parts Sales, Inside," "Automobile Parking Lot/Garage," "Bank, Savings and Loan, or Credit Union," "Bar, Tavern, Nightclub (Special Use Exception only)," "Beer, Liquor & Wine Package Sales," "Chapel-Wedding Event Center," "Church, Synagogue or House of Worship," "Cigar and Tobacco Shop," "Condominium, Residential," "Governmental Office," "Health/Fitness Center," "Hotel (up to 160 rooms)," "Independent Living Facility," "Laundromat," "Medical Quick Care, Emergency Room," "Museum/Art Gallery," "Nursing Home (Convalescence)," "Performing Arts Center with movie screening (up to 15,000 sf AC)," "Recycling Collection Point," "Restaurant, Drive-In," "Retail Stores and Shops," "School, Private or Parochial," "Surgery Center with overnight boarding," "Telecommunications Studio with Offices," "Veterinarian Clinic and/or Kennel, Indoor with overnight Boarding," and "Wine Bar or Winery."

seeking declaratory judgment and a permanent injunction to restrain the enforcement of Ch. 213. Dkt. No. 1 at 2. Garrigues's original complaint also named Steven Gomez, an individual beneficiary of the Restrictions who published statements of intent to circulate a petition under Ch. 213, as an interested party. Dkt. No. 1 at 1. In his First Amended Original Complaint filed on September 1, 2015, Garrigues added Apex Golf as a second interested party. Dkt. No. 3, ¶ 12. This first amended complaint sought "a declaratory judgment that [Ch. 213] is unconstitutional, as well as a permanent injunction" to restrain Abbott and Paxton "from acting under color of state law to deprive [Garrigues] of rights and privileges secured to him by the Texas Constitution and 42 U.S.C. § 1983 and the United State Constitution[.]" Dkt. No. 3, ¶ 2.

On October 12, 2015, Abbott and Paxton filed a motion to dismiss in which they argued, inter alia, that Garrigues's claims were barred by Eleventh Amendment immunity. Dkt. No. 12. In lieu of responding to this motion, on October 23, 2015, Garrigues filed a motion for leave to amend his first amended complaint, Dkt. No. 14. In his second amended complaint, Garrigues removed Abbott and Paxton as Defendants and added Hardie, now the sole named Defendant in this action. No. 14, ¶¶ 1, 3. Substantively, Garrigues added claims attacking the effectiveness of Hardie's petition and subsequent affidavit filed under Ch. 213, and preserved his challenges to the constitutionality of the law itself. Dkt. No. 14, ¶¶ 1, 3. He also dropped any reference to § 1983, as well as any mention of any individual "acting under color of state law." Dkt. No. 14, ¶ 2. On October 27, 2015 the Court granted Garrigues's motion for leave to file this complaint, and denied as moot Abbott and Paxton's motion to dismiss. Dkt. No. 15.

On November 9, 2015, Garrigues filed notice of the constitutional questions raised by his second amended complaint, and certified his electronic service of this notice on Paxton pursuant to Federal Rule of Civil Procedure 5.1.[3] Dkt. No. 19. On

---

[3] At this time the Court did not independently certify these constitutional questions to the Texas Attorney General. Federal Rule of Civil Procedure 5.1(b) and 28 U.S.C. § 2403(b) require that a court supplement the notice required of a party pleading constitutional questions by certifying to the appropriate attorney general that a statute has been questioned. *See id.* Yet the rule does not clarify

December 12, 2015, Garrigues, with leave from the Court, filed his third amended complaint to add certain "facts and legal claims related to the petition vote" he challenges under Ch. 213. Dkt. No. 24. Hardie filed his operative answer to this complaint on January 29, 2015, and included in it a counterclaim for declaratory relief, asking the Court to affirm that the procedures he employed in circulating his petition under Ch. 213 were legally compliant and effective. Dkt. No. 31. Garrigues answered this counterclaim on February 15, 2016. Dkt. No. 32.

On April 20, 2016, Hardie filed a motion for partial summary judgment on all constitutional issues raised by Garrigues's third amended complaint. Dkt. No. 34. On June 9, 2016 Garrigues filed a motion for summary judgment for "lack of mutuality," asking the Court to find that Hardie's petition fails under Texas common law. Dkt. No. 39. On August 15, 2016 Garrigues filed a motion for partial summary judgment on his constitutional claims, Dkt. No. 50, and a motion for summary judgment on Hardie's alleged failure to properly conduct his petition vote under Ch. 213, Dkt. No. 52. Finally, Hardie filed a motion for summary judgment on his alleged compliance with Ch. 213 and all remaining issues raised by Garrigues. Dkt. No. 54. Each of these five summary judgment motions was timely responded to by the adverse party, and received a timely reply from the movant. Additionally, on September 9, 2016, Hardie filed objections to certain summary judgment evidence provided by Garrigues. Dkt. No. 59. On October 19, 2016 the

---

when such certification must be made, and certain federal courts have held that belated certification does not necessarily prevent a court from considering the merits of constitutional questions. *See, e.g.*, *Merrill v. Town of Addison*, 763 F.2d 80, 83 (2d Cir. 1985) ("Absent indication of harm, or prejudice to the government's opportunity to fully present its views, belated certification, while not ideal, is sufficient to honor the purpose of section 2403.") Here, the Attorney General has had notice and an opportunity to intervene as of November 9, 2015, when Garrigues filed his notice of constitutional claims. Additional notice can be implied from the fact that Abbott and Paxton were the original Defendants in this action, who filed a motion to dismiss on October 12, 2015 specifically addressing Eleventh Amendment immunity issues. *See* Dkt. No. 12. In any event, Rule 5.1 never prevents a court from rejecting a constitutional challenge, whether or not an attorney general has had an opportunity to intervene. Fed. R. Civ. P. 5.1(c). Further, even where a constitutional question has been noticed, but not certified, to an attorney general, Rule 5.1 allows a court to enter a final judgment holding a statute unconstitutional, as long as sixty days have passed from the date notice was filed. *Id.* Still, in order to be in conformity with Rule 5.1(b) the Court will certify a copy of this opinion to the Attorney General. If the Attorney General thinks rehearing is necessary, the Court will entertain a motion to this effect. *See Thatcher v. Tenn. Gas Transmission Co.*, 180 F.2d 644, 648 n. 7 (5th Cir. 1950).

parties filed a joint motion to abate all deadlines in this case pending the Court's disposition of the parties' five summary judgment motions. Dkt. No. 65. The Court granted this request on October 21, 2016, noting that it would reset deadlines, as necessary, following a ruling on all pending motions. Dkt. No. 66.

Now before the Court are the five summary judgment motions filed by the parties, as well as Hardie's objections to Garrigues's summary judgment evidence.

### III. Jurisdiction

In his operative third amended complaint, Garrigues seeks "a declaratory judgment that [Ch. 213] is unconstitutional" and that Hardie's affidavit "is null and void"; a permanent injunction to enforce the pre-modification terms of the Restrictions at issue; and a permanent injunction preventing Hardie "or a similarly situated person or entity" from circulating petitions under Ch. 213. Dkt. No. 24 at 2-3. In the alternative, Garrigues asks the Court to declare that Hardie's petition and affidavit, even if constitutional, are not valid both "because the petition lack[ed] mutuality as required by Texas law," and because procedural defects in Hardie's circulation of the petition rendered it ineffective. *Id.* Hardie, in turn, seeks declaratory relief affirming that the petition he circulated, and the affidavit he filed, are in conformity with Ch. 213, such that the Restrictions at issue have been legally modified. Dkt. No. 31 at 10-11.

As an initial matter, the Court finds reason to examine its subject matter jurisdiction to hear this dispute. "To raise a claim in federal court, plaintiffs must demonstrate both that a federal court will have jurisdiction over their claim and also that they (the plaintiffs) have a right of action to initiate that claim." *Harris Cty. v. MERSCORP Inc.*, 791 F.3d 545, 552 (5th Cir. 2015). This is because "federal courts are courts of limited jurisdiction . . . [and] possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). For this reason, "[f]ederal trial and appellate courts have the duty to examine the basis for their subject matter jurisdiction, doing so on their own motion if necessary." *Lewis v. Hunt*, 492 F.3d 565, 568 (5th Cir. 2007) (quoting

*Torres v. Southern Peru Copper Corp.*, 113 F.3d 540, 542 (5th Cir. 1997)). In considering whether the Court has subject matter jurisdiction, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Energy Mgmt. Servs., LLC v. City of Alexandria*, 739 F.3d 255, 257 (5th Cir. 2014) (quoting *Kokkonen*, 511 U.S. at 377).

### a. Subject Matter Jurisdiction

In his operative complaint, Garrigues asserts that the Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) and (4) to hear his claims challenging the legality of Ch. 213 under the United States Constitution, and supplemental jurisdiction under 28 U.S.C. § 1367 over his claims that Ch. 213 violates the Texas Constitution and other Texas law.[4] Dkt. No. 24 at 3. Because the Court must dismiss the entirety of this action if it finds it has no original jurisdiction over Garrigues's claims, Garrigues's invocation of § 1331 (and § 1343(a)(3) and (4)) will be assessed here before any attention is given to the claims Garrigues attempts to bring before this Court under § 1367.[5]

Under § 1331, the "federal question" jurisdiction statute, district courts have original jurisdiction over cases "arising under" the Constitution or federal law. *See* § 1331. "There are two types of cases that fit this "arising under" standard: 'cause[s] of action created by federal law' and state law claims that 'turn on substantial questions of federal law.'" *Enable Mississippi River Transmission, L.L.C. v. Nadel & Gussman, L.L.C.*, 844 F.3d 495, 498 (5th Cir. 2016) (citation omitted). Yet the Court finds that Garrigues's complaint does not fit into either of these molds. Garrigues has not stated any federal cause of action, nor alleged that any implied

---

[4] Garrigues does not actually cite to 28 U.S.C. § 1367, the supplemental jurisdiction statute, but the Court acknowledges that his claim at least substantively references the statute—though Garrigues spends no time in his complaint explaining how his state law claims form part of the same "case or controversy" that his federal constitutional claims derive from, as the statute requires. *See* § 1367(a).
[5] "When a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). "In contrast, when a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over pendent state-law claims." *Id.*

constitutional claim applies to his complaint. Neither has he brought any state-law claim that establishes a right of action "arising under" § 1331. *Id*. Accordingly, Garrigues has failed to sufficiently allege that the Court has federal question jurisdiction over this litigation. *See Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988) ("[W]hether a claim arises under federal law must be determined from the allegations in the well-pleaded complaint.")

Most often, "[a] suit arises under the law that creates the cause of action." *Mims v. Arrow Fin. Services LLC*, 565 U.S. 368, 372 (2012) (quoting *Am. Well Works v. Layne and Bowler Co.*, 241 U.S. 257, 260 (1916)). Accordingly, "there is no serious debate that a federally created claim for relief is generally 'a sufficient condition for federal question jurisdiction.'" *Mims*, 565 U.S. at 372 (quoting *Grable & Sons Metal Products, Inc. v. Drue Eng'g & Mfg.*, 545 U.S. 308, 317 (2005)). Garrigues's initial suit against Abbott and Paxton cited to 28 U.S.C. § 1983, which "creates a private right of action to vindicate violations of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Loupe v. O'Bannon*, 824 F.3d 534, 537 (5th Cir. 2016) (quoting § 1983). Yet his third amended complaint, the operative complaint in this litigation, makes no mention of § 1983, nor any other federal statutory cause of action. Section 1343(a)(3) does not provide any independent source of relief; instead, this statute, along with § 1331, is a "jurisdictional counterpart" to § 1983.[6] *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 116 (1989). The same is true of § 1343(a)(4), which was designed as the jurisdictional foundation for "suits for injunctive relief against conspiracies to deprive citizens of the civil rights specified in 42 U.S.C. § 1985, which includes voting rights."[7] *Chapman*, 441 U.S. at 610. Finally, neither the Declaratory

---

[6] Under § 1343(a)(3), federal jurisdiction exists over "any civil action authorized by law to redress the deprivation under color of state law 'of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.'" *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 612-13 (1979) (citing § 1343(a)(3)).

[7] § 1343(a)(4) provides that states that federal district courts have original jurisdiction where plaintiffs "authorized by law" to bring a civil action seek "to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote." *See* § 1343(a)(4). Unlike § 1343(a)(3), "[j]urisdiction under § 1343(a)(4) is not limited to

Judgment Act nor Federal Rule of Civil Procedure 57, both of which are invoked in Garrigues's complaint, provide "a substantive right to pursue relief in federal court."[8] *MERSCORP*, 791 F.3d at 553; *see also, e.g., Campbell ex rel. Equity Units Holders v. Am. Int'l Grp., Inc.*, 86 F.Supp.3d 464, 470 (E.D. Va. 2015) ("[M]ere invocation of the Declaratory Judgment Act cannot confer 'arising under' jurisdiction under 28 U.S.C. § 1331.")

Additionally, to the extent that Garrigues might seek to assert an implied constitutional right of action for injunctive relief here, the Court is unwilling to recognize such a right *sua sponte* on the strength of Garrigues's pleadings. Although a plaintiff's ability to seek such an implied right has at times been recognized, *see Bell v. Hood*, 327 U.S. 678, 684 & n.4 (1946), more recently the Supreme Court has noted that "implied causes of action are disfavored." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Garrigues raises no preemption argument with respect to Ch. 213. *C.f. Verizon Md. Inc. v. Pub. Service Comm'n of Md.*, 535 U.S. 635, 642 (2002). Nor does he otherwise claim or demonstrate that § 1331's "general grant of federal question jurisdiction" applies to this litigation. *See Elgin v. Dep't of Treasury*, 567 U.S. 1, ___, 132 S.Ct. 2126, 2132 (2012). Indeed, given that the only named defendant in this action is now Hardie, a private citizen, it is difficult to see how Garrigues might feasibly even attempt such a claim.[9]

---

actions against state officials or individuals acting under color of state law." *Chapman*, 441 U.S. at 601 n.1, 619.

[8] Additionally, "'there is . . . nothing automatic or obligatory about the assumption of jurisdiction by a federal court' to hear a declaratory judgment action." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) (citation omitted). As such, even where jurisdiction lies, "a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial[.]" *Id.*

[9] Garrigues does not allege that Hardie was acting on behalf of, or in concert with, the state. Meanwhile the "Fourteenth Amendment itself 'erects no shield against merely private conduct, however discriminatory or wrongful," *District of Columbia v. Carter*, 409 U.S. 418, 423-24 (1973), and litigation under the Contracts Clause, too, requires a nexus with state action. Namely, while the protections of art. I § 10 can reach purely private contracts, the provision prohibits the *states*, not private parties, from impairing these contracts. *See* U.S. Const., Art. I, § 10; s*ee also Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978) ("[M]ost rights secured by the Constitution are protected only against infringement by governments.") Of course the issue of whether Hardie is a proper defendant in this action also relates to Garrigues's standing to bring this action. *See, e.g., Okpalobi v. Foster*, 244 F.3d 405, 424-429 (5th Cir. 2001). This issue is not addressed in depth here, however, as the

Finally, Garrigues has identified no right of action provided by a Texas statute or in state common law that might nonetheless "arise under federal law for 28 U.S.C. § 1331 purposes." *See Grable*, 545 U.S. at 312 (2005). Indeed Garrigues has not alleged that Ch. 213 itself contains a provision providing for legal redress in *any* court when its terms are violated.[10] Garrigues does cite in his complaint to language contained in the restrictive covenant attached to his property, excerpted above, that suggests "any person or corporation" that violates the terms of the Restrictions it contains may be "prosecute[d] [in] proceedings at law or in equity" by "any" beneficiary of these Restrictions. *See* Dkt. No. 24. Yet even if the Court were to assume this language creates a cause of action under Texas law, it would not pass the threshold to guarantee it a hearing in federal court. *See Grable*, 545 U.S. at 314 ("[T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.") The same is true for Garrigues's common-law mutuality claim and his claims regarding the propriety of the petition vote Hardie conducted under Ch. 213—which in any case Garrigues asserts pursuant to this Court's supplemental jurisdiction under § 1367, not as a basis for the exercise of the Court's original jurisdiction under § 1331. In sum, while Garrigues's complaint does allege that Ch. 213 violates art. I § 10 and the Fourteenth Amendment of the U.S. Constitution, the mere mention of a federal constitutional claim does not operate as "a password opening federal courts to any state action embracing a point of federal law." *Grable*, 545 U.S. at 314.

The Fifth Circuit has held that "the pleading burden to establish federal question jurisdiction is low." *Young v. Hoseman*, 598 F.3d 184, 188 (5th Cir. 2010). Yet this low burden is not met here. "A federal court has original or removal jurisdiction only if a federal question appears on the face of the plaintiff's well-

---

Court's finding that it lacks jurisdiction under 28 U.S.C. § 1331 to hear Garrigues's claims, which in any case are barred by the Eleventh Amendment, independently dismisses this action.

[10] In fact, the text of the law itself provides no such right, in contrast to similar state statutes also appearing in the Texas Property Code. *See, e.g.*, Tex. Prop. Code § 201.010.

pleaded complaint[.]" *Bernhard v. Whitney Nat. Bank*, 523 F.3d 546, 551 (5th Cir. 2008). Further, a federal question exists under § 1331 only if such a complaint "establishes either that federal law creates the cause of action [supporting jurisdiction] or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 172 (5th Cir. 2009) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983)). Garrigues's complaint establishes neither of these two bases for finding that a case arises under § 1331, and the Court therefore finds it is without subject matter jurisdiction to hear his claims.[11]

### b. Eleventh Amendment Immunity

Even if the Court were to find it has jurisdiction under § 1331 here, "[t]he Eleventh Amendment jurisdictionally bars a suit in federal court by a private individual against an unconsenting state—absent waiver or congressional abrogation of sovereign immunity pursuant to section five of the Fourteenth Amendment—regardless of the relief sought by the plaintiff." *Texas v. Walker*, 142 F.3d 813, 820 (5th Cir. 1998). Initially, Garrigues named Abbott and Paxton, the Governor and Attorney General of Texas, respectively, as defendants in this action. Yet after Abbott and Paxton filed a motion to dismiss premised on their alleged Eleventh Amendment immunity from suit, Garrigues excluded them from his amended complaint and added Hardie as a defendant in this action. Replacing Abbott and Paxton with Hardie, however, does not erase the necessary inquiry into

---

[11] To be clear for the record, the Court acknowledges the Supreme Court's admonition that federal courts often confuse and blur "the subject-matter jurisdiction/ingredient-of-claim-for-relief dichotomy." *Arbaugh*, 546 U.S. at 511. The Court also notes the Fifth Circuit's reminder that "establishing the court's jurisdiction and the litigants' right of action are two requirements that must be satisfied independently." *Harris Cty.*, 791 F.3d at 552. Yet the Court finds here that—as Garrigues has failed to plead *any* claim in his operative complaint that "arises under" § 1331—it is not merely the insufficiency of his purported "federal question" claims, but the absence of subject-matter jurisdiction over his complaint, that requires the dismissal of Garrigues's suit. In other words, without opining on the merits of Garrigues's claims, the Court finds that Garrigues's complaint falls under the rubric for dismissal described in *Bell v. Hood. See id.,* 327 U.S. at 682-83 ("[A] suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.")

whether Eleventh Amendment immunity bars this Court from hearing Garrigues's claims.

In *Okpalobi v. Foster*, the Fifth Circuit iterated that Eleventh Amendment immunity "bars suits by private citizens in federal court" before noting that generally, "[a] plaintiff may not avoid this bar simply by naming an individual state officer as a party in lieu of the State." 244 F.3d 405, 411 (5th Cir. 2001) (en banc). It seems self-evident that if a plaintiff cannot avoid Eleventh Amendment immunity issues simply by naming an individual state official as a party, Garrigues certainly cannot side-step this bar by installing Hardie, a private individual, as the sole defendant in his purported constitutional challenge to Ch. 213. Indeed, the *Ex parte Young* exception to Eleventh Amendment immunity only serves to prove this rule here. *Ex parte Young* allows state officers to be sued in federal court so long as they have "some connection with the enforcement" of challenged state action or are "specially charged with the duty to enforce" a statute. *Id.* at 414 (quoting *Ex parte Young*, 209 U.S. 123, 157-58 (1908)). Such enforcement powers "typically involve[] compulsion or constraint." *K.P. v. Leblanc*, 627 F.3d 155, 124 (5th Cir. 2010). Hardie is wholly without enforcement powers granted by the state that would allow him to constrain the application of Ch. 213 in the manner Garrigues desires.

This analysis is not altered by the fact that Ch. 213 empowered Hardie to petition his neighbors and file an affidavit recording their modification, by petition, of the Restrictions at issue in this litigation. Texas did not compel Hardie to act as a petition circulator under Ch. 213, and the Supreme Court "has never held that a State's mere acquiescence in a private action converts that action into that of the State." *Flagg Bros.*, 436 U.S. at 166. Further, as a private citizen Hardie cannot prevent other individuals from circulating petitions under Ch. 213—petitions that might result in effecting the same alleged constitutional violations Garrigues complains of here. Finally, in *Okpalobi* the Fifth Circuit rejected, albeit in dicta, the notion that federal courts "should 'pragmatically' apply *Ex parte Young* in a declaratory judgment action" like this one, and simply "assume that the Eleventh Amendment makes an exception for the Declaratory Judgment Act for any case that

seeks to enforce a federal right denied by the state[.]" *Okpalobi*, 244 F.3d at 423, n. 31. Accordingly, the Court finds that even if Garrigues had sufficiently pled a federal question, his lawsuit against Hardie is effectively a suit against Texas that is impermissible under the Eleventh Amendment.

**IV. Conclusion**

For the foregoing reasons, the Court finds that it lacks subject matter jurisdiction to hear Garrigues's complaint, and **DISMISSES** the above-captioned case.

It is so ORDERED.

SIGNED this 9th day of February, 2017.

							_____
							Hilda Tagle
							Senior United States District Judge